UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| COLLEEN NOVIT and DANIEL NOVIT, Individually and On Behalf of their Minor Child, E.N., et al., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02168-TWP-TAB |
| | ) | |
| METROPOLITAN SCHOOL DISTRICT OF WARREN TOWNSHIP, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTIONS TO PRECLUDE
OR LIMIT EXPERT TESTIMONY**

**I.      Introduction**

This matter stems from an incident in which E.N., the minor child of Plaintiffs Colleen and Daniel Novit, suffered injuries while riding on a school bus on April 19, 2018.  Plaintiffs allege that, while riding on a bus operated by Defendant Metropolitan School District of Warren Township, E.N. suffered a seizure.  On the day of the incident, E.N.'s normal bus monitor was absent, so E.N. was assigned Laura Thompson as a substitute bus monitor to his bus, along with bus driver Sheila Ramirez.  Plaintiffs believe that Thompson and Ramirez did not properly respond to E.N.'s alleged seizure.  Plaintiffs' amended complaint alleges 11 separate claims against Warren Township, including violations of the Individuals with Disabilities Education Act, the Americans with Disabilities Act, and the Rehabilitation Act.  Before the Court are motions from Warren Township [Filing No. 59] and Plaintiffs [Filing No. 60] to preclude or limit the testimony of various witnesses disclosed as experts under Fed. R. Civ. P. 702.  As explained in more detail below, these motions are granted in part and denied in part.

II.     **Analysis**

A.     **Legal Standards**

The parties maintain that various expert witnesses of the other should be limited or precluded from offering certain testimony under Federal Rules of Evidence 702.  In addition, Plaintiffs argue that the report of some of Warren Township's experts should be excluded, at least in part, under Federal Rules of Civil Procedure 26(a)(2).

"Under Federal Rules of Civil Procedure, an expert must provide a complete statement of all opinions the witness will express and the basis and reasons for them and the facts or data considered by the witness in forming them." *Duro v. Walton*, No. 3:13-cv-103-JD, 2021 WL 4453741, at *12 (N.D. Ind. Sept. 29, 2021) (internal citation and quotation marks omitted), *affirmed*, 43 F.4th 648 (7th Cir. 2022); see Fed. R. Civ. P. 26(a)(2)(B).  Under Fed. R. Civ. P. 37(c), "[i]f a party fails to provide information . . . required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Rule 702 sets forth the general framework for the admissibility of expert testimony, and provides that a witness who is qualified as an expert based on knowledge, skill, experience, training, or education may provide opinion testimony so long as:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Supreme Court interpreted Rule 702 in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), to mandate that the district court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."

> In performing its gatekeeper role under Rule 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.  In other words, the district court must evaluate: (1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony.

*Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (internal citations and quotation marks omitted).  *See also Kopplin v. Wisconsin Cent. Ltd.*, 914 F.3d 1099, 1103-04 (7th Cir. 2019) ("The ultimate question is whether the expert's approach is scientifically valid, which requires a careful examination of its evidentiary relevance and reliability.  The focus is on the expert's methodology, not his ultimate conclusions."  (Internal citation and quotation marks omitted)).

### B.      Defendant's Motion to Limit Testimony of Dr. Bluth

 Warren Township challenges Plaintiffs' expert witness, Dr. Linda Bluth.  Dr. Bluth is a Special Education Administrator and Special Needs Transportation Consultant.  Warren Township does not question Dr. Bluth's credentials or the disclosure itself.  In addition, Warren Township notes that Dr. Bluth's opinions largely concern Warren Township's alleged non-compliance with transportation and special education laws, regulations, policies, and procedures, and Warren Township does not seek to limit or exclude such opinions.  Rather, Warren Township seeks to limit Dr. Bluth's opinions to the extent a) the opinion is based on a determination that a seizure occurred; b) the opinion goes to the causation of E.N.'s alleged injuries; and c) the opinion constitutes a conclusion of law.  [Filing No. 59, at ECF p. 2.]

The parties are largely in agreement about what testimony Dr. Bluth can present.  First, the Court agrees with the parties that Dr. Bluth cannot opine as to whether a seizure occurred.

[Filing No. 67, at ECF p. 3.] Her *curriculum vitae* shows no academic study or practical experience in the area of medicine or identifying seizures. In addition, Dr. Bluth testified that she has never been formally trained in identifying seizures and has no medical training beyond CPR. Dr. Bluth herself testified that she cannot opine if E.N. was having a seizure. [Filing No. 59-2, at ECF p. 7.] Rather, another expert witness of Plaintiffs, Dr. Polly Westcott, PsyD, is the appropriately disclosed witness to address that question.[1] However, Plaintiffs argue that Dr. Bluth should be permitted to testify as to whether the bus driver and/or bus monitor's actions complied or departed from the Seizure Action Plan. [Filing No. 67, at ECF p. 3.] The Court agrees that Dr. Bluth is qualified to testify about the regulations and whether they were followed.

Second, Warren Township argues that Dr. Bluth is not qualified to testify at to the causation of E.N.'s injuries. [Filing No. 59, at ECF p. 4.] Once again, Plaintiffs do not dispute that Dr. Bluth cannot opine on the medical causation of E.N.'s injuries. [Filing No. 67, at ECF p. 4.] That matter is for Dr. Westcott. However, Dr. Bluth may testify that, in her opinion, the bus monitor's lack of knowledge and training significantly contributed to mishandling a serious life-threatening emergency. In addition, testimony that an Individualized Health Care Plan and Seizure Action Plan were not implemented, as they should have been, for E.N. to receive safe transportation on the school bus, is also well within Dr. Bluth's expertise.

Third, Warren Township argues that Dr. Bluth's report contains several legal conclusions, such as that the school district was negligent, irresponsible, and reckless. [Filing No. 59, at ECF

---

[1] Plaintiffs argue in the alternative that to the extent Dr. Bluth relies on a finding that a seizure occurred in making an opinion of her own, she can rely on Dr. Westcott's opinion stating as much. [Filing No. 67, at ECF p. 4.] However, Dr. Bluth did not and could not have relied on Dr. Westcott's opinion, because it was not available until almost eight months after Dr. Bluth issued her report. [Filing No. 47-2 (Dr. Bluth's report, dated May 25, 2021); Filing No. 47-1 (Dr. Westcott's report, dated Jan. 22, 2022).] In addition, Dr. Bluth testified in her deposition that she did not review the expert report of Dr. Westcott. [Filing No. 69-1, at ECF p. 2.]

p. 5.]  Plaintiffs do not dispute that Dr. Bluth should not use the term negligent within her testimony at trial.  However, Plaintiffs argue that nothing prevents Dr. Bluth from providing the quoted testimony without the term "negligent"—i.e., that Warren Township's actions were improper, failed to comply with standards, failed to comply with the law, were reckless, etc. [Filing No. 67, at ECF p. 6.]  The Court agrees that Dr. Bluth cannot provide testimony concluding that Warren Township was negligent.  This is a question for the jury.  However, nothing prohibits Dr. Bluth from testifying that certain actions were improper or that Warren Township failed to comply with or follow proper standards.

Therefore, Warren Township's motion to limit Dr. Bluth's testimony is granted in part. Dr. Bluth is not permitted to testify as to whether E.N. suffered a seizure, as to the causation of E.N.'s injuries, or regarding legal conclusions regarding negligence.  However, she is not prohibited from saying that certain actions were improper or that someone failed to comply with proper standards.

### C.   Plaintiffs' Motion to Preclude or Limit Testimony of Defendant's Designated Expert Testimony

Plaintiffs take issue with three witnesses designated as experts by Warren Township: Dr. Vinay Puri, Jim White, and Pamela Kline.  [Filing No. 60, at ECF p. 4.]  Plaintiffs argue that the content of those experts' reports and their deposition testimony establishes that they will be unable to provide reliable testimony regarding several questions relevant to this case, and that they did not disclose opinions along with bases and facts supporting those opinions in the manner required by Fed. R. Civ. P. 26.

### i.     Dr. Vinay Puri

Dr. Puri is a neurologist who reviewed certain records and relayed his impressions of those records in a report for Warren Township.  [Filing No. 60-1.]  Plaintiffs argue that the Court should either bar Dr. Puri from testifying altogether, or, alternatively, bar him from providing opinions he did not disclose in his report, opinions disclosed without proper reasoning, or opinions for which he cannot provide reliable testimony.  [Filing No. 60, at ECF p. 23.] Plaintiffs raise four particular concerns with Dr. Puri's opinions.

First, Plaintiffs argue that Dr. Puri should be barred from testifying on the appropriate nature and attentiveness of the observations of E.N. on the school bus by the monitor and driver. [Filing No. 60, at ECF p. 23.]  Plaintiffs note that Dr. Puri testified in his deposition that he has no qualifications to make such an opinion, and that his opinion contained within his report would only be based on the fact that the monitor was looking at E.N.  Specifically, he testified that he has no experience in policymaking with training of employees of school districts, that he did not have nor review any personnel records, that he has no experience in policymaking or training in regard to schools and the transportation of special needs students, and that he has not been involved in any training for people like a bus monitor or bus driver for special needs students. [Filing No. 60-4, at ECF p. 17, 27, 39.]  Dr. Puri further admitted that he did not know anything with regard to Thompson and Ramirez and whether they were properly monitoring this child as required by the policy, and all that he knows is the monitor, Thompson, was paying attention to the child.  [Filing No. 60-4, at ECF p. 44.]

Warren Township argues that Dr. Puri is offering his opinion not from a policy or training perspective but rather from a medical perspective.  However, the Court agrees that his testimony establishes that Dr. Puri is not qualified to opine on the appropriateness of the actions

of Thompson and Ramirez on the date of the incident, nor anything regarding their actions.  As a neurologist, Dr. Puri may be an expert on brains, but nothing establishes he has any expertise regarding buses.  Such testimony would be unreliable, would not assist the trier of fact, and is barred pursuant to Fed. R. Civ. P. 26(a) and 37(c).  Thus, Plaintiffs' motion is granted in part as it relates to this portion of Dr. Puri's testimony.

Next, Plaintiffs argue that Dr. Puri should be barred from testifying that the episode on the bus is not suggestive of a patient having a seizure, and that the episode was suggestive of a patient that was less responsive, and this was related to the medications the patient was given. [Filing No. 60, at ECF p. 24.]  Plaintiffs argue that Dr. Puri provided no bases or reasoning for this portion of his opinion.  However, Plaintiffs overlook the very next line of Dr. Puri's report, where he states: "The patient was taking Baclofen and Valium which were likely sedating the patient."  [Filing No. 60-1, at ECF p. 1.]  This statement in Dr. Puri's report provides his reasoning to support his opinion that E.N. was less responsive due to medications he was currently taking.  This relates to a medical issue, which Dr. Puri is qualified to address as a neurologist.

Plaintiffs also note that Dr. Puri received more recent records regarding E.N. from the Cincinnati Children's Hospital.  However, those records were password protected, and when Dr. Puri was unable to open them, he set them aside and deemed them not relevant to his review. Warren Township argues that Dr. Puri's failure to review these records does not make his opinion unreliable.  The Court agrees with Plaintiffs that it is problematic that Dr. Puri did not look at the password-protected records.  However, Plaintiffs set forth no suggestion as to what those records say, how many pages of records were contained in that file, or otherwise provide the Court with any foundation or insight into the potential importance of those particular records.

As a result, the Court cannot conclude that Dr. Puri's failure to review these records requires

excluding or limiting Dr. Puri's testimony.  Instead, any potential shortcomings can be

adequately addressed through robust cross-examination at trial.  Thus, Plaintiffs' motion is

denied as it relates to this portion of Dr. Puri's report.

Third, Plaintiffs argue that Dr. Puri should be barred from testifying on the cause of

E.N.'s neurological status.  [Filing No. 60, at ECF p. 26.]  Plaintiffs contend that Dr. Puri did not

include this opinion in his report consistent with Fed. R. Civ. P. 26(a)(2)(i).  In support, Plaintiffs

reference Dr. Puri's testimony acknowledging that his report does not use the term "progressive

neurological disease."  [Filing No. 60-4, at ECF p. 61.]  However, Dr. Puri's report did state:

> My overall impression is that this is a patient with an underlying neurological
> disease, not defined at least until the records have reviewed in 2018 who likely
> has a neurologic disease that showed worsening of his neurological status in April
> 2018 after an incident on the school bus where the patient was less responsive.
> This episode of less responsivity was related to medications, including Valium
> and Baclofen, and not a seizure.

[Filing No. 60-1, at ECF p. 2.]  Thus, contrary to Plaintiffs' assertion, Dr. Puri's report contains

several bases and reasoning.

As Warren Township points out, Plaintiffs hang their hat on a quote from Dr. Puri's

deposition, but in doing so, ignore the surrounding exchange.  Prior to the deposition quote

Plaintiffs reference regarding the term progressive neurological disease not appearing in Dr.

Puri's report, Dr. Puri stated that the report did contain his opinions and the basis for those

opinions:

> Q       And would this report – does it consist of a complete statement of all of
> your opinions and the bases for and the reasons for those opinions?
> A       Does it contain all of my – the – it contains the bases, but I would not say
> it contains – yes.  It does contain all of my opinions as long as it is, you know,
> understood that the underlying neurologic, you know disease process in the
> patient is not well defined.  And I think I do make that clear in my note.

[Filing No. 60-4, at ECF p. 31.]  The conclusion is largely implicit in his report.

Once again, cross-examination is the remedy to most of Plaintiffs' concerns.  *See, e.g.,*
*Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) ("[T]he accuracy of the actual evidence
is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation
of contrary evidence, and careful instruction on the burden of proof.'") (*quoting Daubert v.*
*Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)).  Moreover, Plaintiffs had the full
opportunity to depose Dr. Puri, which mitigates Plaintiffs' concerns.

Finally, Plaintiffs argue that Dr. Puri's opinions number 3 to 6 should be excluded,
because "they are just a resuscitation of records, and by Dr. Puri's own admission, do not serve as
the bases or reasoning for his actual opinions on the matter as those are not included within the
report."  [Filing No. 60, at ECF p. 28.]  However, Warren Township argues that those paragraphs
are not opinions, but rather are in fact the bases for Dr. Puri's opinions.  The paragraphs at issue
state:

> 3.      Upon the arrival of the patient at Riley Children's Hospital, the patient had
> an EEG which did not reveal any ongoing seizures, the patient's laboratory testing
> was all normal, the patient was felt to be hemodynamically stable.  There was no
> evidence of distress or problems during this time while in the ER.
> 4.      Upon the patient's admission to the hospital at Riley Children's Hospital in
> May of 2022 because of concerns that the patient was not back to himself, that he
> was not able to sit up by himself or stand up supported, he was evaluated by
> Neurology.  He was seen by the Chief of Pediatric Neurology during this
> admission and the conclusion was the patient's problem with low tone was related
> to his medications.  His medication dosages were decreased accordingly.
>
> 5.      The patients MRI scan of the brain showed evidence of changes in the
> brain that are nonspecific.  It showed changes in the white matter of the brain with
> prominent ventricles and cerebral sulci.
>
> 6.      In reviewing his records from 2018, he has had multiple genetic tests done
> in the past that were normal, he had not had whole exome sequencing done in
> 2018.  The reason he was having all those genetic testing done and there are
> repeated references to whole exome sequencing, which is a type of genetic test, is
> because his diagnosis was never certain.

[Filing No. 60-1, at ECF p. 1.]

Plaintiffs argue that these paragraphs do nothing but regurgitate records. However, these records formed the bases of Dr. Puri's opinion. Thus, these paragraphs are just a citation to the bases of his opinions. Plaintiffs put too much weight on Dr. Puri's testimony that his report does not include the bases for his opinions. Dr. Puri's testimony clearly references the facts included in these paragraphs when he explained the bases for his various opinions in the report during his deposition. [Filing No. 60-4, at ECF p. 49, 51, 61.] Accordingly, Plaintiffs' motion to exclude is denied as it relates to this portion of Dr. Puri's report.[2]

**ii.    Jim White**

Plaintiffs next argue that the Court should bar White, a retired transportation director, from testifying, either in whole or in part, relating to specific issues Plaintiffs raise. The Court addresses each in turn.

First, Plaintiffs argue that White should be barred from testifying on matters noted in his report not specific to Warren Township that are solely based on White's general knowledge of transportation-related training programs. [Filing No. 60, at ECF p. 29.] Plaintiffs cite to the bulk of White's report, arguing that he should not be allowed to testify regarding the opinions in Nos. 1, 2, 3, the second paragraph of No. 5, and No. 6. Generally, these findings state:

> No. 1. A description of White's general familiarity of general training programs non-specific to Warren Township, along with a general description of why White feels standardization of training is necessary.

---

[2] Finally, Plaintiffs assert in their reply brief that they do not seek to disqualify Dr. Puri as a medical expert based on a lack of qualification, but rather, their motion stems from Warren Township's "wholly inadequate disclosure" under Fed. R. Civ. P. 26(a). [Filing No. 71, at ECF p. 10.] Dr. Puri described his qualifications, identified the records he reviewed, and described his impressions of the records. While the disclosure could have been more robust, it is not so lacking as to justify prohibiting Dr. Puri's testimony.

No. 2.  A general description of the difficulties in effectuating training in schools, once again non-specific to defendant.

No. 3.  General belief that the bus driver was experienced and would have "learned traits."

No. 5.  Second paragraph provides general opinions on training and the difficulty to complete training; non-specific to Warren Township.

No. 6.  General statement of White's perspective and what he sees as the goals, challenges, and purpose of the transportation of special needs students.

[Filing No. 60-2, at ECF p. 2-4.]

Plaintiffs argue that none of these opinions are tied to the facts of this case.  While generally true, White's report establishes his expertise on providing safe transportation of students in his role as a transportation director for Hamilton Southeastern Schools for 15 years.  Thus, he is qualified to provide testimony on whether training or policies would be considered sufficient.  However, through cross-examination, Plaintiffs would certainly be free to point out that White admitted to reviewing no training records or materials related to the school or the driver/monitor in this case.  [Filing No. 60-5, at ECF p. 19, 22.]

Next, Plaintiffs argue that White should be barred from testifying regarding whether Thompson, the bus monitor, was negligent, neglectful, or inattentive.  In Opinion No. 4, White refers to the fact that other statements indicate Thompson was negligent.  However, White's report itself does not reach a conclusion on negligence.  The Court agrees that White cannot reach a legal conclusion and provide testimony using buzz words like "negligent."  To the extent White intends to do so, Plaintiffs' motion is granted in part.  However, White can testify regarding whether Thompson was attentive toward E.N.  As a former transportation director, he has established his expertise regarding the appropriateness of the behavior of bus monitors.  His opinion is based on his review of documents, including depositions of the bus driver and bus

11

monitor, a video of the incident, and his 15 years of experience.  Thus, Plaintiffs' motion is denied as it relates to White's ability to testify regarding the bus monitor's attentiveness.

Plaintiffs also argue that White should be barred from providing any medical testimony, such as testimony on seizures or the cause of the incident on the school bus.  [Filing No. 60, at ECF p. 32.]  Plaintiffs indicate that they anticipate Warren Township will elicit testimony from White on medical topics, and they argue that this goes well beyond his expertise.  Plaintiffs reference White's Opinion No. 4, which relates to the response of the bus monitor and bus driver to E.N.'s alleged seizure.  [Filing No. 60-2, at ECF p. 3.]  Warren Township agrees that White is not qualified to offer expert opinions on medical topics.  [Filing No. 68, at ECF p. 12.]  Thus, White cannot testify regarding medical opinions, such as whether medication complicated E.N. having a seizure.

All parties agree that White is not qualified to testify on medical matters.  Topics that would fall under medical matters include when any seizure began, how long a seizure could have lasted, that a certain treatment was not needed once E.N. was on the ground, that the medication causing E.N. to sleep complicated the seizure manifestations, or whether a wheelchair is the safest place for a student during a seizure.  White's experience as a transportation director does not qualify him to provide medical conclusions, and Warren Township sets forth no additional qualifications that would allow White to testify as to these topics.  Accordingly, Plaintiffs' motion is granted in part as it relates to White.  However, White is qualified to testify regarding the response Thompson and Ramirez had to the situation that occurred.

Next, Plaintiffs argue that White should be barred from testifying regarding the appropriateness of the bus driver calling E.N.'s parents before calling 9-1-1.  [Filing No. 60, at ECF p. 33.]  Plaintiffs point out once again that White is not a medical expert.  Thus, they argue

he is not qualified to state that it would be appropriate for the bus driver to ignore the seizure action plan and call the child's mother instead of 9-1-1 as required by the plan.  This is a closer call.  For now, the Court declines to limit White's testimony on this issue.[3]  White has 15 years of experience as a transportation director at a large public school district.  That experience seemingly makes him qualified to opine on the appropriateness, from his perspective in the public school transportation industry, of a bus driver calling a parent, rather than 9-1-1, in a potential emergency situation.  Once again, Plaintiffs have had the opportunity to depose White and can further challenge White's testimony through cross examination.

Finally, Plaintiffs argue that White should be barred from testifying on the sufficiency or content of the training of Thompson and Ramirez.  [Filing No. 60, at ECF p. 33.]  White has admitted that he has not reviewed any training records of Thompson or Ramirez, nor has he seen any of Warren Township's training materials, policies, or procedures.  Thus, White has no specific knowledge of the training of school transportation personnel, no specific knowledge as to Warren Township's training program, no special knowledge as to Warren Township's view or implementation of standardized training, no knowledge of any difficulty specific to Warren Township in effectuating training, and no specific knowledge relating to skill acquired by the bus monitor while working.  Accordingly, any such testimony would be fatally unreliable, and Plaintiffs' motion is granted as it relates to this portion of White's testimony.

---

[3] Pretrial rulings are preliminary in nature.  *See, e.g., Eversole v. H & J Trucking, Inc.*, No. 3:09-cv-007-RLY-WGH, 2010 WL 9589559, at * 3 (S.D. Ind. June 4, 2010) ("The rulings with respect to these motions [to exclude expert testimony and in limine] are preliminary in nature and are subject to change depending upon the evidence and argument presented at trial.").  Trial developments could prompt the trial judge to revisit rulings in this order.

### iii.    Pamela Kline

Lastly, Plaintiffs argue that the Court should bar Pamela Kline, BSN, RN, LMC, CLCP, from testifying on her report regarding her Life Care Plan Review of Plaintiffs' expert, Laura Lampton.  [Filing No. 60, at ECF p. 34.]  Specifically, Plaintiffs argue that Kline should be barred from testifying on the standard of care of a life care planner and the inability to duplicate anything within Lampton's Life Care Plan; her commentary contained within her report; and the consistency with costing in Lampton's Life Care Plan.

First, Plaintiffs claim that Kline should be barred from testifying on the standard of care of a life care planner and the inability to duplicate anything within the Life Care Plan.  In support, Plaintiffs contend that Kline's report does not reference specific standards of care, where those standards come from, or that she is even reviewing Lampton's Life Care Plan for this purpose.  Warren Township admits that Kline has not cited to any over-arching body of standards but argues that Kline should be permitted to testify regarding the standard of care of a life care planner because by identifying the missing portions of Lampton's life care plan, she identifies the standard of care based on her experience.  [Filing No. 68, at ECF p. 15.]

Plaintiffs take additional issue with the fact that Kline represents throughout her report that she would be or is unable to duplicate certain items within the report, yet when questioned on this in her deposition, Kline testified that she had never actually attempted to duplicate any costs, had not called any providers, and had not spoken to anyone that was identified in her life care plan.  [Filing No. 60-6, at ECF p. 37.]  Rather, Kline testified that she was only asked to do a life care plan review, not to do a full life care plan report herself.  [Filing No. 60-6, at ECF p. 39.]  Kline cannot testify regarding an inability to duplicate since she never actually attempted to

duplicate the report.  However, she may explain that she was not asked to do any duplicating and thus did not attempt to do so.

As for the larger point Plaintiffs make, the Court agrees that the lack of reference to any specific standards of care is problematic.  Indeed, it is difficult to even categorize Kline's report as a report.  It is mostly just commentary, questions, and some math.  [Filing No. 60-3.] Plaintiffs' concerns are valid.  As noted above, the Court's review of a potential expert witness's testimony under *Daubert* and Fed. R. Evid. 702 is a question of reliability, and the Court considers whether the expert's specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue; whether the testimony is based on sufficient facts or data; whether it's the product of reliable principles and methods; and whether the expert has reliably applied those to the facts of the case.  It is problematic that Kline's report contains no standard of care or otherwise sets forth reliable principles and methods.  There is no way for the Court to fully evaluate Kline's report without more context to it.

Moreover, Plaintiffs also argue that Kline should be barred from testifying on her commentary contained within the report.  The Court agrees.  Kline's report is replete with commentary in the form of questions and open-ended statements.  This is not the purpose of an expert report and adds to the Court's concern that Kline's "report" is hardly a report at all.  Those questions and statements have no bases or reasoning.  Instead of seeking to have their own life care plan conducted by Kline, Warren Township elected to have Lampton's life care plan reviewed; this led to Kline creating four pages of unanswered questions and concerns, rather than opinions.  Warren Township argues that this criticism amounts to one about style, not content. The Court disagrees.  It goes much further than that.

15

However, the Court can perceive potential value to the trier of fact in hearing Kline's testimony regarding calculation errors.  It appears Kline caught a $1.4 million dollar error in Lampton's report.  She also explains, at least in part, that there is no consistency with how Lampton assessed costs within the Life Care Plan.  Kline opines that in Lampton's plan, sometimes the costs were rounded up, and sometimes they were rounded down.  Thus, Plaintiffs' motion is denied in part as it relates to these limited portions of Kline's report.  Kline can testify at trial regarding the calculation error she found in Lampton's report.  She can also testify regarding the discrepancy with how Lampton assessed costs in the Life Care Plan.  Any concerns that Plaintiffs have with Kline as it relates to her testimony on these two points can be addressed through cross-examination at trial.  The remainder of Kline's report, however, is excluded.

## III.   Conclusion

For these reasons, the Court grants in part and denies in part both motions [Filing No. 59; Filing No. 60.]  Specifically, the Court issues the following rulings:

1.      Warren Township's motion to limit the testimony of Plaintiffs' expert witness, Dr. Bluth is granted in part.  Dr. Bluth cannot opine as to whether a seizure occurred, the medical causation of E.N.'s injuries, or draw legal conclusions such as on negligence.  However, nothing prohibits Dr. Bluth from testifying that certain actions were improper or failed to comply with proper standards.

2.      Plaintiffs' motion to preclude or limit the testimony of Dr. Puri is granted in part. Dr. Puri cannot opine on the appropriateness of the actions of the school bus driver and monitor. However, the remainder of Plaintiffs' objections are overruled.

3.      Plaintiffs' motion to preclude or limit the testimony of White is granted in part. White cannot reach legal conclusions or use buzz words like "negligent," testify regarding

medical opinions or testify on the sufficiency or content of the training the monitor and bus

driver in this case received.  He may testify on general matters of training or policies that would

be considered sufficient, whether Thompson was attentive toward E.N., and the appropriateness

of the driver calling E.N.'s parents before calling 9-1-1.

      4.      Plaintiffs' motion to preclude or limit the testimony of Kline is granted in part.

Klein's testimony is limited to testimony regarding calculation errors in Lampton's report and the

lack of consistency with how she assessed costs in the report.

      Date: 12/21/2022

          Tim A. Baker
          United States Magistrate Judge
          Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email