**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| COLLEEN NOVIT, and | ) | |
| DANIEL NOVIT, individually and on behalf | ) | |
| their Minor Child, E.N., | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-02168-TWP-TAB |
| | ) | |
| METROPOLITAN SCHOOL DISTRICT OF | ) | |
| WARREN TOWNSHIP, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**ORDER GRANTING DEFENDANT'S**</u>
<u>**MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

This matter is before the Court on a Motion for Partial Summary Judgment filed by Defendant Metropolitan School District of Warren Township ("Warren Township") pursuant to Federal Rule of Civil Procedure 56 (Filing No. 34). Plaintiffs Colleen and Daniel Novit, individually and on behalf of their minor child, E.N. (collectively, the "Novits"), initiated this action to redress physical injuries suffered by E.N., a wheelchair bound disabled student, while being transported home on a school district bus. The Novits' eight-count Amended Complaint seeks monetary damages pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*., § 504 of the Rehabilitation Act ("RHA"), 29 U.S.C. § 794, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., the U.S. Constitution, the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983, and state tort law (the "Amended Claims") (Filing No. 1-2 at 27-40). Warren Township argues that partial summary judgment on the Amended Claims is appropriate because the Novits failed to exhaust administrative remedies, and the Amended Claims are time barred and do not relate back to the initial Complaint (Filing No.

37; Filing No. 53).  For the reasons set forth below, the Court **grants** Warren Township's Motion for Partial Summary Judgment.

## I.      FACTUAL BACKGROUND

The following facts are not necessarily objectively true, but, as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A.      E.N.'s Individual Education Plan

The Novits' minor child, E.N., is a non-verbal, wheelchair bound student who suffers from cerebral palsy, microcephaly, seizures, fetal alcohol syndrome, epilepsy, refeeding syndrome, failure to thrive, and post-traumatic stress disorder (Filing No. 1-2 at ¶ 28).[1]  E.N.'s parents enrolled him at a Warren Township school during the 2017-2018 school year.  (Filing No. 35-1).  Warren Township held a "move-in" case conference committee ("CCC") meeting with Plaintiff Colleen Novit and other stakeholders to plan and create E.N.'s Individual Education Plan ("IEP") (Filing No. 35-2 at 1-12).

The CCC determined E.N. was eligible to receive special education services (Filing No. 35-2 at 4) and special transportation (Filing No. 35-2 at 8; Filing No. 35-3). The CCC also determined that E.N. required adult supervision, had a seizure disorder that impacted transportation, had communication concerns because he was non-verbal, had special equipment including a wheelchair, had medication to be transported and/or administered, that his condition posed a potential 9-1-1 emergency, and that E.N. was non-ambulatory. (Filing No. 19 at ¶ 30; Filing No. 35-3.)

---

[1] Warren Township accepts these diagnoses for purposes of summary judgment, but reserves the right to contest them at any trial of this matter.

The CCC met again on October 30, 2017 (Filing No. 35-5) and Colleen Novit participated along with her attorney (Filing No. 35-5 at 17). The CCC discussed E.N.'s transportation needs among other topics (Filing No. 35-5 at 13) and agreed that E.N.'s "bus driver and monitor [would] be trained in his Diastat[2] protocol, [and that] he [would] be transported in [a] wheelchair, door to door." (Filing No. 35-5 at 13). Warren Township was to "mak[e] sure appropriate staff [] watched videos on Diastat and seizures, [and] mak[e] sure [the] Health Care Coordinator [had] a date to train appropriate staff (including bus staff) on training materials…." (Filing No. 35-5 at 15.)

**B.     The April 19, 2018—Bus Incident**

On April 19, 2018, E.N.'s regular bus monitor was absent, and a substitute bus monitor was assigned to his bus route (Filing No. 19 at ¶ 63). The bus driver was unfamiliar with E.N.'s needs as outlined in his IEP and the bus monitor was unfamiliar with E.N.'s seizure action plan and had not received hands-on training on administering Diastat (Filing No. 1-2 at ¶ 78). While being transported home, E.N. suffered a seizure episode for approximately twenty minutes on a Warren Township school bus (the "Bus Incident"). *Id*. at ¶ 80-111.  Neither the bus driver nor the bus monitor ever administered Diastat to E.N, *id*. at ¶ 119, or fully complied with his seizure action plan.  As a result, E.N. suffered "neurological and physical regression, an overall regression in his medical state, and personal injuries." *Id*. at ¶ 120.

**C.     The Procedural History**

On May 7, 2018, the Novits withdrew E.N. from Warren Township (Filing No. 35-4) and on April 17, 2019--nearly one year following the incident--filed a Complaint in Marion Superior Court ("State Court")[3] alleging two counts of state negligence against Eastridge Elementary

---

[2] Diastat is a medication used to treat seizures (Filing No. 19 at 17).
[3] Cause No. 49D05-1904-CT-011570 and styled *Colleen and Daniel Novit, Individually and On Behalf of their Minor Child, E.N. v. Metropolitan School District of Warren Township, et.al*.

School, Metropolitan School District of Warren Township Transportation Department, Metropolitan School District of Warren Township Board of Education, Dr. Dena Cushenberry—the superintendent, Sheila Ramirez—the bus drive, Jane Doe Monitor—later learned to be Laura Jane Thompson (collectively, "Dismissed Defendants"), and Warren Township.  (Filing No. 1-1.) The Complaint alleged negligence in the reasonable supervision and care of E.N., the training and hiring of the bus driver and monitor, and an unsafe environment.  *Id*. at ¶ 43.  On April 26, 2021, the Novits filed a Motion for Leave to file an Amended Complaint, (Filing No. 1-2), which the State Court granted on July 14, 2021 (Filing No. 1-3).

On The Novits filed their Amended Complaint on August 3, 2021. The Amended Complaint contains six new counts—Counts II, IV, V, VI, VII, and VIII—against only Warren Township[4] pursuant to the IDEA, ADA, RHA, the Fourteenth Amendment to the U.S. Constitution, and § 1983 (Filing No. 1-2 at 4).  The claims in the Amended Complaint are:

**Count I**—Negligence (state law claim)

**Count II**—based on Negligence *per se* by Colleen Novit and Daniel Novit on behalf of Minor child, E.N. against Warren Township for allegedly violating the IDEA, § 504 of the RHA, and the ADA (Filing No. 1-2 at ¶ 140-43);

**Count III**— Negligence-Loss of Services (state law claim)

**Count IV**—based on Negligence *per se* by Colleen Novit and Daniel Novit Individually against Warren Township for allegedly violating the IDEA, § 504 of the RHA, and the ADA (Filing No. 1-2 at ¶ 149-53);

---

[4] On May 11, 2020, the Marion Superior Court approved a joint stipulation that effectuated the dismissal of the Dismissed Defendants. The stipulation provides in relevant part:

"2(b). any actions or inactions of dismissed Defendants relating to this case, including the yet to be added bus monitor involved in the incident underlying this litigation, are actions or inactions of Metropolitan School District of Warren Township Schools;
2(c). if any actions or inactions of the dismissed Defendants related to this case, including the yet to be added bus monitor involved in the incident underlying this litigation, are found to establish liability for any of the claims, *that liability is applicable to the Metropolitan School District of Warren Township Schools*." (Emphasis added) (Filing No. 45-2 at 1-4.)

**Count V**—under the IDEA, Fourteenth Amendment, and § 1983 by Colleen Novit and Daniel Novit on behalf of Minor child, E.N., against Warren Township for allegedly "failing to conduct an appropriate evaluation of E.N.'s transportation needs and failing to properly plan for, coordinate, communicate, disseminate, and provide E.N. with a proper safe, and free appropriate public education, special education, related services, travel training, medical training, and all entitlements provided by IDEA including but not limited to a safe, proper, and appropriate transportation to and from school." (Filing No. 1-2 at ¶ 156);

**Count VI**—under § 504 of RHA, Fourteenth Amendment, and § 1983 by Colleen Novit and Daniel Novit on behalf of Minor child, E.N., against Warren Township based on the same factual allegations as found in Count V and allegedly "failing to accommodate properly and safely E.N.'s handicap and disabilities, thus excluding E.N. from participation in, denying E.N., the benefits of and subjecting E.N. to discrimination." (Filing No. 1-2 at ¶ 162);

**Count VII**—under the ADA, Fourteenth Amendment, and § 1983 by Colleen Novit and Daniel Novit on behalf of Minor child, E.N., against Warren Township based on the same factual allegations as counts V and VI (Filing No. 1-2 at ¶ 167); and

**Count VIII**—under the Fourteenth Amendment and § 1983 by Colleen Novit and Daniel Novit on behalf of Minor child, E.N., against Warren Township for allegedly "improperly supervis[ing] [E.N.] on the school bus with an inadequately trained and/or untrained bus monitor and/or driver during his drive home from school," and also impeding E.N.'s "right to freedom from harm, right to safe and proper school bus transportation, his liberty interest in protecting and preserving [his] life and safety…and protecting E.N.'s personal bodily integrity." (Filing No. 1-2 at ¶ 172-73). This count also incorporates the factual allegations found in Counts V-VII. *Id*. at ¶ 174.

Warren Township later removed the matter to federal court (Filing No. 1) and filed the instant Motion seeking a partial summary judgment as to all six of the federal claims in the Amended Complaint—Counts II, IV-VIII (the "Amended Claims"). (Filing No. 34).  The Novits responded and Warren Township replied (Filing No. 45; Filing No. 53). The Novits have petitioned the Court for leave to file a surreply (Filing No. 54) and Warren Township has filed a response in opposition (Filing No. 56).

## II.    SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Federal Rule of Civil Procedure 56(a).  The Court views the record in the light most favorable to the non-moving party—the Novits—and draws all reasonable inferences in that party's favor.  *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).  However, inferences supported by only speculation or conjecture will not defeat a summary judgment motion.  *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  The court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

 "[T]he burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).  The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion.  *Grant v. Trustees of Indiana University*, 870 F.3d 562, 572-73 (7th Cir. 2017).

### III.      MOTION FOR LEAVE TO FILE SURREPLY

As an initial matter, the Court will address the Novits' Motion for Leave to File a Surreply (Filing No. 54). The Novits argue they should be allowed to file a surreply because Warren

Township's Reply in support of its Motion (Filing No. 53) includes new evidence, citation to a previously uncited case and new arguments. *Id*. In light of the limited purpose of a surreply brief and the limited circumstance under which they are permitted, the Court **grants in part and denies in part** the Novits' Motion for Leave to File Surreply (Filing No. 54).

The "purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Lawrenceburg Power, LLC v. Lawrenceburg Municipal Utilities*, 410 F.Supp.3d 943, 949 (S.D. Ind. 2019). Courts allow a surreply brief only in limited circumstances to address new arguments or evidence raised in the reply brief or objections to the admissibility of the evidence cited in the response. *Id*. (citing *Reis v. Robbins*, 2015 WL 846526, *2 (S.D. Ind. Feb. 26, 2015)). Here, Warren Township admits it submitted new evidence (Filing No. 53-1; Filing No. 53-2; Filing No. 53-3; Filing No. 53-4; Filing No. 53-5; Filing No. 53-6)[5] in its Reply to the Novits' futility and the tolling arguments (Filing No. 56). Therefore, the Court permits and has considered the Novits' surreply in response to this new evidence.

Warren Township contends the Novits should not be allowed to file a surreply with respect to the previously uncited case*, Charlie F. v. Bd. Of Educ. of Skokie Sch. Dist.*, or the alleged new arguments. 68, 98 F.3d 989 (7th Cir. 1996). The Court agrees with Warren Township. The fact that Warren Township relied upon a previously uncited case does not mean that it has presented a new argument. *See Westfield Ins. Co. v. TCFI Bell SPE III LLC*, 2019 WL 1330456, *4 (S.D. Ind.

---

[5] (1) Consultation Report of Dr. Jessica Camilleri dated May 7, 2018 (Filing No. 53-1); (2) Excerpt of Occupational Therapy Evaluation conducted by Natalie Wenzel dated May 11, 2018 (Filing No. 53-2); (3) Excerpt of Physical Therapy Evaluation conducted by Kyla Schmidt on May 9, 2018 (Filing No. 53-3); (4) Excerpts of Physical Therapy Treatment notes written by Kyla Schmidt dated May 10, 2018, and May 11, 2018 (Filing No. 53-4); (5) Indiana Supreme Court Order dated March 16, 2020 (Filing No. 53-5); and (6) Indiana Supreme Court Order dated May 29, 2020 (Filing No. 53-6).

Mar. 25, 2019) (denying leave to file surreply where the other party merely presented additional case law to support its initial argument.").  Warren Township simply presented additional case law, *Charlie F.*, to support its original argument that the Novits failed to exhaust the IDEA's administrative process.  This is not grounds for leave to file a surreply.

Lastly, the Novits allege several new arguments were advanced in Warren Township's Reply: (1) Plaintiffs failed to comply with Local Rule 56-1(b); (2) Plaintiffs failed to cite to any evidence that a change to the IEP could not remedy the damage to E.N.'s body; (3) Plaintiffs failed to allege any permanent injuries and cited to new evidence claiming there were recommendations given to Plaintiffs; (4) Plaintiffs did not offer any argument to counter Warren Township's assertion that the Novits' Negligence *Per Se* claim was time barred; (5) under Ind. Code § 34-7-6 *et. seq.*, Indiana's Governor does not have authority to toll the statute of limitations; (6) the Court should apply Federal Rule of Civil Procedure 15(C) analysis instead of Indiana Trial Rule 15(c) analysis under state law; and (7) the Novits failed to designate sufficient evidence or cite to binding precedent to allow the IDEA, § 504, ADA, or § 1983 claims to continue (Filing No. 54 at 2-4).

A review of the parties' opening, response, and reply briefs indicates that Warren Township's Reply was appropriate in light of the Novits' response brief (Filing No. 46).  The alleged new arguments cited in the Novits' Motion for Leave merely represents Warren Township's rebuttal to the Novits' Response (Filing No. 37 at 10; Filing No. 37 at 18; Filing No. 37 at 19; Filing No. 37 at 24, Filing No. 37 at 28).  Further, Warren Township could not have advanced the Local Rule 56-1(b) argument until the Novits submitted their Response. Notably, courts have broad discretion to determine how and when to enforce its local rules.  *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir.1994).

The Novits' proposed surreply brief submitted at Filing No. 54-1 is deemed filed as of the date of this Entry and the Court shall only consider portions of the Novits' proposed Surreply that relate to the new evidence filed by Warren Township.  But even if the Court were to consider the Novits' full Surreply, it would still conclude there are no genuine issues of material fact to preclude granting Warren Township's Motion for Partial Summary Judgment.

## IV.   DISCUSSION

Warren Township argues that partial summary judgment of the Amended Complaint is appropriate because the Amended Claims are time barred, do not relate back to the original Complaint, and the Novits failed to exhaust administrative remedies under the IDEA. Warren Township further contends no action may lie under § 1983 for violations of the IDEA or § 504, and the Novits cannot prevail on their substantive § 504, § 1983, Fourteenth Amendment, IDEA nor ADA claims.  The Novits argue that the Amended Claims are timely because they were tolled and the Amended Claims relate back to the original Complaint pursuant to Indiana Trial Rule 15(C).  The Novits further contend they were not required to exhaust administrative remedies because doing so would have been futile, and that the substantive § 504, § 1983, Fourteenth Amendment, IDEA, and ADA claims are not without merit.  For the reasons set forth below, the Court **grants** Warren Township's Motion for Partial Summary Judgment.

### A.   Whether the Novits Complied with Local Rule 56-1

As a preliminary matter, Warren Township argues the Novits' "Statement of Material Facts in Dispute" should be stricken for violating Local Rule 56-1 because although it includes the required "Statement of Material Facts in Dispute," it does not identify "factual disputes nor specifically controvert" Warren Township's "Statement of Material Facts Not in Dispute." (Filing No. 53 at 4-5.)  The Court agrees.

9

Under our local rules, a party seeking summary judgment must file a supporting brief with a section "labeled 'Statement of Material Facts Not in Dispute' containing the facts: (1) that are potentially determinative of the motion; and (2) as to which the movant contends there is no genuine issue." S.D. Ind. L.R. 56-1(a). The non-movant's brief similarly "must include a section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." S.D. Ind. L.R. 56-1(b). Such statements should contain only material facts, "not...mere background facts," and must "state facts, not the party's argument...." S.D. Ind. L.R. 56-1(a) cmt.; S.D. Ind. L.R. 56-1(b) cmt. The movant's facts "are admitted without controversy" unless the non-movant "specifically controverts" them in his fact statement; shows them to be unsupported by admissible evidence; or shows that reasonable inferences in its favor can be drawn from them sufficient to preclude summary judgment. S.D. Ind. L.R. 56(f)(1)(A)–(C). The obligation falls to the parties, not the district court. *Hinterberer v. City of Indianapolis*, 966 F.3d 523, 528-29 (7th Cir. 2020) (affirming the striking of non-movant's Rule 56-1 statement where it failed to "identify the potentially determinative facts that […] required resolution at a trial.").

Here, there are a great many facts. However, it does not appear that any are in dispute. Warren Township's Rule 56-1 statement is six pages in length, divided into twenty-two numbered paragraphs (Filing No. 37 at 5-10). Out of a thirty-eight-page brief, the Novits' Rule 56-1 statement is thirteen pages long, divided into six sections with the following headings: (1) E.N.'s Early Life, (2) E.N.'s Medical Conditions, (3) Standard IEP Process for MSD of Warren Township, (4) E.N.'s IEP with the MSD of Warren Township, (5) April 19, 2018, and (6) E.N.'s Life after April 19, 2018 (Filing No. 46 at 5-17). The Novits' Rule 56-1 statement provides mere background facts of this case. The statement does not "specifically controvert" Warren Township's Rule 56-1

statement nor show Warren Township's Rule 56-1 statement to be unsupported by admissible evidence or show that reasonable inferences in their favor can be drawn from them to sufficiently preclude summary judgment.

The Novits' Rule 56-1 statement defeats the entire purpose of the statement required by Local Rule 56-1(b)—"to identify just what facts are actually in dispute." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000); *Hinterberer*, 966 F.3d at 528-29 ("The district court does not shoulder the obligation to separate the fair from the foul, doing the work for the parties and identifying what facts are truly disputed and may require resolution at a trial."). Therefore, the Novits' Rule 56-1 statement is **stricken**, and Warren Township's Rule 56-1 statement is **admitted as undisputed**.

Even if the Novits' Rule 56-1 statement were not stricken, the Court would still conclude that there are no genuine issues of material fact to preclude a determination of Warren Township's Motion for Partial Summary Judgment.

## B. <u>Whether the Novits' Amended Claims are Time Barred</u>

Warren Township argues the Amended Claims—Counts II, IV, V, VI, VII, and VIII—of the Amended Complaint are time barred by Indiana's two-year statute of limitations and, even if they were not, the Amended Complaint does not relate back to the original Complaint (Filing No. 37 at 17-21). The Novits do not dispute that a two-year statute of limitations applies to the Amended Claims[6] but instead argue that E.N.'s disability and an Executive Order issued by Indiana's Governor in response to the Covid-19 emergency tolled the applicable statute of

---

[6] Indiana's two-year statute of limitations for personal injury actions applies to the Amended Claims. *See Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013) (applying two-year statute of limitation to party's ADA claim); *Serino v. Hensley*, 735 F.3d 588, 590 (7th Cir. 2013) (applying two-year statute of limitation to party's § 1983 claim); *Bayer ex rel. Bayer v. Duneland Sch. Corp.*, 2005 WL 1983850, *1 (N.D. Ind. Aug. 16, 2005) (applying two-year statute of limitation to party's IDEA claim); *P.P ex rel Michael P. v. West Chester Area School Dist.*, 585 F.3d 727, 736 (3d Cir. 2009) (applying IDEA's two-year statute of limitation to party's RHA claim); *see also* Ind. Code § 34-11-2-4.

limitations or, alternatively, the Amended Complaint relates back to the original Complaint under Indiana Trial Rule 15(C) (Filing No. 46 at 21-31). The Court first addresses the latter argument because if the Amended Complaint relates back to the original Complaint, it would be immaterial whether the Amended Claims were filed after the two-year statute of limitations or whether they were not tolled. If the Amended Claims relate back, they would be treated as though they were part of the original Complaint, thereby circumventing being barred by the two-year statute of limitations.

### 1.      **The Relation Back Doctrine**

The Novits argue that even if the Amended Claims—Counts II, IV, V, VI, VII, and VIII—were not tolled, under Indiana Trial Rule 15(C), they relate back because they "arose out of the conduct, transaction, or occurrence set forth" in the original Complaint and, as such, were timely (Filing No. 46 at 26-27). Warren Township in turn argues that the Amended Complaint does not relate back to the original Complaint pursuant to Fed. R. Civ. P. 15(c)(1)(C) because certain alleged facts from the Amended Complaint are different from what was alleged in the original Complaint (Filing No. 37 at 24). The Court agrees with the Novits that the Amended Complaint relates back to the original Complaint and therefore the Amended Claims are timely.

### a.      **Indiana Trial Rule 15(C) Governs**

The purpose of the doctrine of relation back is to allow a party who, through the course of discovery, realizes a new claim or defense the opportunity to use this claim or defense despite the running of the statute of limitations. *McCarty v. Hosp. Corp. of Am.*, 580 N.E.2d 228, 231 (Ind. 1991). Whether to grant a Trial Rule 15(C) motion is a matter for the trial court's discretion. *Hupp*

*v. Hill*, 576 N.E.2d 1320, 1327 (Ind.Ct.App. 1991). Rule 15(C) governs relation back of amendments and provides:

> (C) *Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.* An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within one hundred and twenty (120) days of commencement of the action, the party to be brought in by amendment:
>
> (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and
>
> (2) knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Ind. Trial R. 15(C) (emphasis added).  This case concerns the first point, specifically whether the Amended Claims arose out of the same "conduct, transaction, or occurrence" as set forth in the original Complaint.

Indiana's relation-back rule, Ind. T.R. 15(C), "is materially identical to the federal rule." *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 558 (7th Cir. 2011).  Federal Rule of Civil Procedure 15(c)(1)(B), similarly provides that "[a]n amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  This similarity is unsurprising, of course, as many of Indiana's trial rules are based on the federal civil procedure rules.  *Ind. Farmers Mut. Ins. Co. v. Richie*, 707 N.E.2d 992, 9987 (Ind. 1999).  Thus, a determination of whether the Amended Complaint relates back under either the federal or state rules would lead to the same outcome.

However, when a plaintiff files an amended complaint while the case is still in state court, the state trial rule applies instead of the Federal Rules of Civil Procedure. *See Clemons v. City of*

*Hobart*, 2018 WL 1531787 (N.D. Ind. March 29, 2018).  Therefore, Indiana Trial Rule 15(C) governs the relation back analysis.

### b.    The Scope of the IDEA

Understanding the scope of the IDEA aides in determining whether to allow the Amended Claims.  The IDEA requires schools to provide students with a free, appropriate, and public education or better known as a "FAPE".  20 U.S.C. § 1412(a)(1).  A school district provides a FAPE by designing and implementing an individualized instructional program set forth in an IEP, which "must respond to all significant facets of the student's disability, both academic and behavioral."  *Alex R., ex rel. Beth R. v. Forrestville Valley Community Unit School Dist. No. 221*, 375 F.3d 603, 610 (7th Cir. 2004); *see also* 20 U.S.C. § 1401(8).  The IEP is crafted by a child's "IEP Team"—a group of school officials, teachers, and parents—and spells out a personalized plan to meet all of the child's "educational needs." §§ 1414(d)(1)(A)(i)(II)(bb), (d)(1)(B).  The IEP also lists the "special education and related services" to be provided so that the child can "advance appropriately toward [those] goals."   §§ 1414(d)(1)(A)(i)(I), (II), (IV)(aa).   Related services include:

> transportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

20 S.C. § 1401(a)(17).

### c.    The Novits' Amended Complaint Relates Back

Trial Rule 15(C) ensures claims comply, rather than conflict, with statutes of limitations.  *Miller v. Patel*, 174 N.E.3d 1061. 1066 (Ind. 2021).  This is because the allegations in the original

14

complaint provided notice that the defendant "may be subject to any possible additional claims" stemming from those allegations. *McCarty v. Hosp. Corp. of Am.*, 580 N.E.2d 228, 231 (Ind. 1991). The party who seeks relation back bears the burden of proving that the conditions of Rule 15(C) are met. *Wabash Grain, Inc. v. Smith*, 700 N.E.2d 234, 239 (Ind.Ct.App.1998).

In *McCarty*, the Indiana Supreme Court held that the "conduct, transaction or occurrence" referred to in Rule 15(C) means the factual circumstances that gave rise to the original claims, the general injuries sustained, and the general conduct causing those injuries. 580 N.E.2d at 231. McCarty initially instituted an action alleging a doctor performed an unnecessary operation, the hospital failed to investigate the need for the operation and the hospital concealed its knowledge of the fact that the doctor was performing unnecessary surgeries. *Id*. at 230. McCarty later amended the complaint to include additional claims

> (1) that the hospital breached an implied-in-fact contract by failing to employ qualified doctors at a time when it knew or should have known that [the doctor] was performing unnecessary surgeries; (2) that a nurse, an agent of the hospital, assigned the responsibility of investigating the need for surgeries occurring at the hospital, failed to recognize that this surgery was unnecessary; (3) that the hospital failed to institute an adequate investigation procedure to determine the necessity of operations at the hospital; and (4) that the hospital and its agents entered into a conspiracy with the doctor to perform unnecessary surgeries and that they aided and abetted the doctor in performing these surgeries.

*Id*.

*McCarty* explained that to determine whether particular factual circumstances relate back to the original complaint, the court must determine whether "evidence tending to support the facts alleged in the amended complaint could or would naturally have been introduced under the former pleading to support the original complaint[]." *Id*. *McCarty* found that the factual circumstances upon which the amendment was based were similar to those in the initial complaint, and that a change in legal theory does not create a new "cause of action." *Id*. *McCarty* reasoned that the

15

defendant would not suffer any prejudice or undue hardship because the defendant received notice that they may be subject to the possible additional claims or defenses stemming from "the general injury and general conduct" at issue and not merely those claims or defenses resembling those already pled. *Id*.

Here, the original Complaint alleged two counts of negligence.[7]   ([Filing No. 1-1 at 9](#)- 11). Count I alleges that Warren Township failed to exercise "reasonable care with regard to [the] supervision of E.N., the hiring and training of [the bus driver] and [bus monitor] [regarding E.N.'s seizure and Diastat protocol], providing an unsafe environment for E.N., and failing to properly monitor and supervise E.N."   ([Filing No. 1-1 at ¶ 43](#).)   Count II simply incorporated the prior allegations from the Complaint, including those from Count I, and sought damages.   *Id*. at ¶ 46-49.   Undoubtably, Counts II and IV of the Amended Complaint, which are based on negligence *per se*, relates back to the two negligence counts pled in the original Complaint.   The evidence supporting the facts in the Amended Complaint could or would naturally be introduced to support the original Complaint, specifically as it relates to Warren Township's duty of care under the ADA, IDEA, and RHA, and whether Warren Township breached said standard of care when they placed an inadequately trained bus driver and an untrained bus monitor on E.N.'s bus route.

Warren Township asserts the Amended Complaint contains facts never alleged in the original Complaint, specifically regarding E.N.'s "education, evaluations, related services, placement, and the school's policies or customs:

> **Paragraph 29**—alleges facts regarding Warren Township's determination of E.N.'s eligibility for special education and related services ([Filing No. 19 at ¶ 29](#));

---

[7] To recover on a negligence claim, plaintiffs must establish three elements: "(1) a duty on the part of the defendant to conform its conduct to a standard of care arising from its relationship to the plaintiffs; (2) the defendant's failure to conform its conduct to the requisite standard of care required by the relationship; and (3) injury to the plaintiffs proximately caused by the defendant's breach of its duty." *Holt v. Quality Motor Sales, Inc.*, 776 N.E.2d 361, 365 (Ind.App.2002). "In a negligence *per se* action, the statute [or ordinance] supplies a defendant's standard of care—the second element in a tort claim." *F.D. v. Ind. Dep't of Child Servs.*, 1 N.E.3d 131, 143 n.12 (Ind. 2013).

**Paragraphs 31 and 32**—allege facts regarding the CCC's decision to forego an evaluation of E.N. because there was sufficient data necessary to determine his eligibility for special education and related services and how the CCC came to that decision (Filing No. 19 at ¶¶ 31, 32);

**Paragraph 44**—alleges Warren Township did not fully and properly evaluate E.N.'s transportation needs or formulate a proper and appropriate plan to ensure E.N.'s safety (Filing No. 19 at ¶ 44); and

**Paragraph 128**—alleges that E.N. was assigned to Eastridge Elementary School by MSD Warren Township without sufficient evaluation of E.N (Filing No. 19 at ¶ 128)."

(Filing No. 37 at 22.)   Warren Township further contends that "the original Complaint did not mention special education or Warren [Township]'s alleged failure to provide E.N. with a FAPE or Warren [Township]'s obligations under the IDEA."   (Filing No. 37 at 23.)   Additionally, Warren Township claims "the original Complaint made no mention or implication of any policy, practice, or custom of Warren [Township] that led to Plaintiffs' alleged constitutional deprivation."   *Id*.

After a careful review of the original Complaint, Warren Township's Answer to the original Complaint, and the Amended Complaint, the Court determines that allowing the Amended Claims to proceed would not prejudice nor place any undue hardship upon Warren Township.   In Warren Township's Answer to the original Complaint, Warren Township admitted that E.N.'s transportation needs, as outlined in his IEP, required that the bus driver and bus monitor be trained on his seizure and Diastat protocol (Filing No. 1-4 at 73).   Warren Township further admitted owing E.N. a duty of care, that the bus driver and bus monitor were its employees acting within the scope of their employment during the Bus Incident, and invoked the qualified immunity defense (Filing No. 1-4 at 71; Filing No. 1-4 at 82).   Therefore, Warren Township should have been on notice that the Novits could or would file constitutional claims regarding a denial of a FAPE stemming from the Bus Incident.

17

The Court is however unpersuaded that the removal of paragraphs 29, 31, 32, and 128 would entirely vitiate the existence of Counts V, VI, VII, and VIII, specifically as they relate to E.N.'s denial of a FAPE stemming from Warren Township's failure to place an adequately trained bus driver and monitor on E.N.'s bus route.  Considering E.N.'s IEP required that the bus driver and monitor be trained on Diastat and his seizure action plan, and Warren Township failed to do so, it is only fair to allow the Amended Claims to proceed in this respect because Warren Township should have been on notice of the potential for the Novits to file the Amended Claims based on the allegations in the original Complaint.

To the extent that the Amended Claims seek to redress a denial of a FAPE in connection with E.N.'s placement at Eastridge Elementary School or his educational and related services evaluation while at Eastridge Elementary School, then those claims do not relate back to the original Complaint because Warren Township was not on notice of the potential for those claims to be filed.  The original Complaint centers around the hiring and training, or lack thereof, of the bus driver and bus monitor.  Therefore, Warren Township could not have been on notice regarding the Novits' claim for a denial of the FAPE with respect to (1) properly determining E.N.'s eligibility for special education and related services; (2) CCC's decision to forego an evaluation of E.N.; or (3) E.N.'s assignment to Eastridge Elementary School.

Paragraph 44 undoubtably relates back to the original Complaint because it alleges Warren Township's failure to "fully and properly evaluate E.N.'s transportation needs or formulate a proper and appropriate plan … to ensure E.N.'s safety."  (Filing No. 1-2 at ¶ 44.)  Because Warren Township placed an inadequately trained bus driver and an untrained bus monitor on E.N.'s bus route, which led to or exacerbated his alleged physical injuries, then Warren Township should have been on notice of the potential for the Novits to bring claims for a denial of a FAPE stemming

from the Bus Incident.  Warren Township failed to plan accordingly to meet E.N.'s transportation needs.  Therefore, the Court concludes that Counts II, IV, V, VI, VII, VIII all relate back to the original Complaint and, as such, are all timely.

The Court now turns to whether the Novits were required to exhaust administrative remedies prior to filing the Amended Complaint.

## C.   Whether the Novits were Required to Exhaust Administrative Remedies

Warren Township argues the Novits were required to exhaust administrative remedies under the IDEA prior to filing the Amended Claims—Counts II, IV, V, VI, VII, and VIII—because they either seek relief under to the IDEA or allege Warren Township's failure to provide E.N. with a FAPE (Filing No. 37 at 12).  The Novits in turn argue they were not required to exhaust administrative remedies because the relief sought—monetary damages for physical injuries—is not available under the IDEA and, as such, any attempt to exhaust administrative remedies would have been futile (Filing No. 46 at 17).

### 1.   Exhaustion Under the IDEA

The IDEA guarantees children with disabilities a FAPE through the implementation of an IEP.  *Fry v. Napoleon Cmty. Sch.*, — U.S. —, 137 S.Ct. 743, 748–49 (2017).  At the same time, Title II of the ADA forbids public entities from discriminating against persons with disabilities.  *See* 42 U.S.C. §§ 12131–12132.  And rounding out the trio, the RHA requires public schools (among other entities) to reasonably accommodate students with disabilities.  *Alexander v. Choate*, 469 U.S. 287, 299–301 (1985).  But before students can bring suit under these statutes, they must satisfy the IDEA's exhaustion requirement.  Section 1415(l) of the IDEA addresses its relationship

19

with other laws—like the ADA and RHA—protecting disabled children.  The relevant provision of §1415(l) with respect to the exhaustion of administrative remedies reads:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(1).

The exhaustion doctrine embodies the notion that "agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *McCarthy v. Madigan*, 503 U.S. 140 (1992). The IDEA charges local educational agencies with the responsibility of establishing programs to provide disabled students with a FAPE.  *See* 20 U.S.C. § 1414(a).  At the same time, the states have primary responsibility for ensuring that local educational agencies comply with the requirements of the IDEA.  *See* 20 U.S.C. §§ 1412(6), 1414(b).  Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children. *See generally McKart v. United States*, 395 U.S. 185, 193–95(1969) (discussing policies reflected by exhaustion doctrine).

Courts universally recognize that parents need not exhaust the procedures set forth in 20 U.S.C. § 1415 where resorting to the administrative process would be either futile or inadequate. *See*, *e.g.*, *Honig v. Doe*, 484 U.S. 305, 327 (1988).  Excusing exhaustion in cases of futility and

inadequacy is based on general exhaustion principles, *see* 5 Jacob Stein, Glenn Mitchell & Basil Mezines, Administrative Law § 49.02 (1992).

### 2.     The Amended Claims Seek to Redress E.N.'s Denial of a FAPE

It is uncontested that the Novits did not exhaust the administrative remedies available under IDEA.  The sole issue is whether the Novits were required to exhaust the administrative process before filing the Amended Complaint and whether doing so would have been futile.

A plaintiff cannot avoid the requirement to exhaust administrative remedies under §1415(l) of the IDEA simply by bringing his or her claim under a different statute.  *See generally Fry*, 137 S.Ct. at 743.  The United States Supreme Court in *Fry* abrogated the seminal Seventh Circuit case. *See Id.* at 755 (abrogating *Charlie F. v. Board of Ed. of Skokie School Dist.*, 98 F.3d 989 (7th Cir. 1996)).  Under *Fry*, the Supreme Court held that the test for determining whether exhaustion of the IDEA's administrative process is required hinges on whether the lawsuit "seeks relief for denial of a free and appropriate public education".  *Id.* at 754.  Contrary to the Seventh Circuit's approach under *Charlie F.*, the Supreme Court requires courts to specifically look at the type of relief requested.

> That inquiry makes central the plaintiff's own claims, as § 1415(l) explicitly requires. The statutory language asks whether a lawsuit in fact "seeks" relief available under the IDEA—not, as a stricter exhaustion statute might, whether the suit "could have sought" relief available under the IDEA (or, what is much the same, whether any remedies "are" available under that law) ... [The plaintiff] is the "master of the claim" ... she identifies its remedial basis—and is subject to exhaustion or not based on that choice.

*Id.* at 755 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 and n.7 (1987)).

The Court must consider the "substance" of the complaint, not the "use (or non-use) of particular labels and terms."  *Id.*  To determine whether the substance of the complaint seeks relief for the denial of an appropriate education under IDEA, the court can ask a pair of hypothetical

questions: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library?  And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?"  *Id.* at 756.  If the answer to both questions is no, then the complaint "probably" arises under IDEA and is subject to its exhaustion requirements.  *Id.*

Here, the Novits explicitly and repeatedly allege Warren Township denied E.N. a FAPE. In Counts II, IV and V, the Novits specifically invoke the IDEA (Filing No. 1-2 at ¶ 141; Filing No. 1-2 at ¶ 151; Filing No. 1-2 at ¶ 156).  The substance of the paragraphs supporting Counts V, VI, VII, and VIII describe Warren Township's failure to conduct an appropriate evaluation of E.N.'s transportation needs, failure to accommodate properly and safely E.N.'s handicap and disabilities, and failure to provide E.N. with a "proper, safe, and free appropriate public education, special education, related services."  (Filing No. 1-2 at ¶ 156; Filing No. 1-2 at ¶ 162; Filing No. 1-2 at ¶ 167; Filing No. 1-2 at ¶ 172-74.)  Therefore, it cannot be said that the Novits are not seeking to redress E.N.'s denial of a FAPE.

Even if the Court were to determine the Amended Claims did not explicitly concern the denial of a FAPE, application of the *Fry* test would result in a finding that the gravamen of the Amended Complaint concerns the denial of a FAPE.  Under the *Fry* analysis, the Court answers both hypothetical questions in the negative. If the questions are framed around the use of "inadequately trained and/or untrained bus monitor and/or driver," then such claims would fall under IDEA.  It would be nonsensical to raise a claim over inadequately trained or untrained paraprofessionals at the theatre, or for a school visitor to claim that the use of such paraprofessionals violated their rights.  Indeed, the Novits argue that the use of inadequately trained or untrained paraprofessionals caused the harm suffered in this case (Filing No. 1-2 at ¶

156; Filing No. 1-2 at ¶ 162; Filing No. 1-2 at ¶ 167; Filing No. 1-2 at ¶ 172; Filing No. 1-2 at ¶ 174).

E.N. does not have a constitutional right to an appropriate public education with properly trained personnel. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). He does, however, have a statutory right, under IDEA, to a "free appropriate public education" tailored to his needs, provided by properly trained personnel. 20 U.S.C. § 1412(a)(1). Therefore, under the *Fry* test, the Court concludes that the gravamen of the Amended Complaint concerns the denial of a FAPE stemming from the injuries incurred during the Bus Incident and, as such, the Amended Claims are subject to administrative exhaustion under the IDEA.

Having concluded that E.N.'s Amended Claims are subject to administrative exhaustion, the Court turns to whether it would have been futile for the Novits to exhaust the administrative remedies under the IDEA.

**3.    Pursuing Administrative Remedies Would Not Have Been Futile**

The Novits argue that they were not required to exhaust administrative remedies under the IDEA because doing so would have been futile since the relief they seek—monetary damages for physical injuries—is not available under the IDEA. Warren Township argues the Novits have not met their burden in proving futility. The Court agrees with Warren Township.

Citing to the allegations in the Amended Complaint is not enough. The burden to demonstrate futility rests with the party seeking to avoid the exhaustion requirement. *See Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 488 n.8 (2d Cir. 2002) (citing *Honig*, 484 U.S. at 327). Exhaustion is not needed where administrative review would be futile or inadequate. *See Honig*, 484 U.S. at 326–27; *Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268,

1274–75 (10th Cir.2000) (holding that a disabled student who suffered a fractured skull and exacerbation of a seizure disorder when she was placed in an unsupervised windowless closet did not need to exhaust because the claim was brought "solely to redress" the physical injuries and was outside of the scope of IDEA).

In *McCormick*, the Seventh Circuit found that exhaustion of the administrative process would have been futile since the IDEA did not provide a remedy for the student's alleged physical injuries. *McCormick v. Waukegan School Dist. No. 60*, 374 F.3d 564 (7th Cir. 2004). In *McCormick*, parents of a student suffering from muscular dystrophy sued the school district because his physical education teacher required him to engage in strenuous activity not permitted in his IEP, causing him muscle and kidney damage from overexertion. *Id* at 566. The court concluded that after examining the "theory behind the grievance" in the plaintiff's complaint, that the nature of the claim was not educational, and that no change to the IEP could remedy, even in part, the damage done to the plaintiff's body. *Id*. Therefore, exhaustion of the administrative process would have been futile because the injuries were physical not educational. *Id*.

Here, the Novits' Amended Complaint seeks relief for the denial of a FAPE which led to E.N.'s alleged "permanent injury." Specifically, the Novits claim that, as a result of the Bus Incident, E.N. suffered "neurological and physical regression … an overall regression in his medical state, and … personal injuries." (Filing No. 1-2 . at ¶ 120.) The Novits' Amended Complaint goes on to state that "[p]rior to the Incident, E.N. was responsive, happy, enjoyed playing with toys, was showing increasing ability and desire to communicate, was showing marked improvements to his health, and was participating in physical therapy among other things." *Id*. at ¶ 129. In the Novits' Motion for Leave to file a Surreply, they point out that "Plaintiffs designated

the report of Dr. Polly Westcott outlining the injuries to E.N. and set forth facts in citation reference therefrom as well. [Dkt. 34, p. 14-15.]." (Filing No. 54-1 at 5.)

However, a careful review of the docket reflects that Filing No. 34 is Warren Township's Motion for Partial Summary Judgment and said document does not include a report from Dr. Polly Westcott.  Dr. Westcott's report was, however, filed by Warren Township in conjunction with its Reply and includes Dr. Westcott's evaluation of E.N. following the Bus Incident (Filing No. 40-1 at 1-7).  Regardless of whether Dr. Westcott's report is merely recommendations, or whether the recommendations would fully remedy E.N.'s alleged permanent physical injuries, it is clear that E.N.'s alleged injuries are of the type that the IDEA was designed to redress.  Multiple records demonstrate that medical professionals recommended E.N. be evaluated for and continue physical and occupational therapy in response to his alleged regressions (Filing No. 53-1 at 4; Filing No. 53-2; Filing No. 53-4 at 2).  When conducted, those evaluations and sessions documented that E.N.'s rehabilitation potential was "fair" to "excellent." (Filing No. 53-1; Filing No. 53-2; Filing No. 53-3; and Filing No. 53-4.)

While the Court is troubled by the alleged egregious conduct of both the bus driver and bus monitor, that is not enough to override the administrative exhaustion process.  The Court is not persuaded that E.N.'s ongoing neurological and physical challenges as outlined in the Amended Complaint or in Dr. Westcott's report, cannot be addressed through the IDEA's administrative process.  Notably, the Novits' Amended Complaint and Dr. Westcott's report are devoid of an allegation of a physical injury of the type that might render exhaustion futile.  In contrast to the students in *McCormick*—who suffered kidney damage, and *Padilla*—who suffered a fractured skull, E.N.'s Amended Complaint generally alleges suffering "neurological and physical regression, … an overall regression in his medical state, and … personal injuries." (Filing No. 1-2

at ¶ 120.)  Since E.N.'s injury was due to the asserted failure to provide transportation services tailored to meet E.N.'s need, the injury may be rectifiable or mitigable by modifying E.N.'s IEP.

The Court recognizes the facial attraction to a rule that seeking damages alone overcomes the exhaustion requirement, as compensatory damages are not available in IDEA proceedings.  But this approach ignores the central role of exhaustion in the IDEA framework.  Exhaustion serves Congress' intent that educational experts—not the courts—address deficiencies in the provision, construction, or implementation of a student's IEP in the first instance.  Reading the requirement any other way would do exactly what Congress and *Fry* told us not to—let artful pleading trump substance.  *See* S. Rep. No. 99–112, at 15 (noting that § 1415(l) should not be interpreted to let parents "circumvent the [IDEA's] due process procedures and protections"); *Fry*, 137 S. Ct. at 755. The IDEA process is designed to remedy the denial of FAPEs, so it can hardly be said that the Novits alleging such denials will, as a rule, walk away empty handed.

Accordingly, after closely examining the "theory behind the grievance" in the Novits' Amended Complaint, exhaustion in this case would not be futile, and because the Novits have not exhausted their administrative remedies, the Amended Claims outlined in the Amended Complaint—Counts II, IV, V, VI, VII, and VIII—must be dismissed.[8]

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Warren Township's Motion for Partial Summary Judgment on Counts II, IV, V, VI, VII, and VIII of the Amended Complaint (Filing No.

---

[8] While the Seventh Circuit has not looked at *Fry* after it was decided, district courts within the Seventh Circuit have and each have dismissed without prejudice claims based on a failure to exhaust. *See e.g. Doe v. Twp. High Sch. Dist. 214*, No. 19-cv-3052, 2020 WL 1081726 (N.D. Ill. Mar. 6, 2020); *Doe Child by Doe v. Stark Cnty. Cmty. Unit Sch. Dist. #100*, No. 19-cv-1215-MMM, 2019 WL 6702538 (C.D. Ill. Dec. 9, 2019); *M.S. by M.S. v. Barrington Cmty. Unit Sch. Dist. 220*, No. 19-cv-5118, 2019 WL 5260757 (N.D. Ill. Oct. 17, 2019); *J.P. v. Williamson Cnty. Educ. Servs.*, No. 3:16-cv-879-NJR-DGW, 2018 WL 9651501 (S.D. Ill. Mar. 27, 2018); *J.P. v. Williamson Cnty. Educ. Servs.*, No. 316-cv-879-NJR-DGW, 2017 WL 2733882 (S.D. Ill. June 26, 2017); *Considine-Brechon v. Dixon Pub. Sch. Dist. # 170*, No. 16-cv-50133, 2017 WL 2480751 (N.D. Ill. June 8, 2017); *Pierce as Next Friend of B.P. v. Whiteside Sch. Dist. No. 115 Bd. of Educ.*, No. 22-CV-1153-JPG, 2022 WL 14813416, at *2 (S.D. Ill. Oct. 26, 2022).

34) and, as such, those claims are **DISMISSED**.  The Court declines to exercise supplemental jurisdiction over the remaining two state law tort claims—Counts I and III—and **REMANDS** them to the State Court for further proceedings.

   **SO ORDERED.**

  Date:  1/3/2023

              Hon. Tanya Walton Pratt, Chief Judge
              United States District Court
              Southern District of Indiana

DISTRIBUTION:

Benjamin Albert Spandau
WALDRON TATE BOWEN FUNK SPANDAU LLC
ben@tatebowen.com

Brandon Eric Tate
WALDRON TATE BOWEN SPANDAU LLC
brandon@wtbs-law.com

Katherine Anne Piscione
WALDRON TATE BOWEN FUNK SPANDAU LLC
katie@wtbfs-law.com

Kevin Michael Bowen
WALDRON TATE BOWEN FUNK SPANDAU LLC
kevin@wtbfs-law.com

Jessica L. Billingsley
CHURCH CHURCH HITTLE & ANTRIM (Noblesville)
jbillingsley@cchalaw.com

Samuel Roy Robinson
CHURCH CHURCH HITTLE & ANTRIM (Noblesville)
srobinson@cchalaw.com